IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                          No. CR 21-1394 RB

SALVADOR ESTEVAN COBOS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Salvador Cobos's Amended Motion to Withdraw Guilty Plea (Doc. 93), Objections to Presentence Investigation Report (Doc. 95), and pro se Motion to Proceed (Doc. 110). The Court held a hearing on January 24, 2023. (*See* Doc. 111.) For the reasons discussed in this Opinion, the Court will deny the motion to withdraw the guilty plea, grant in part the objections, and deny the motion to proceed.

**I.**     **Factual and Procedural Background**

    **A.**     **Factual and Procedural History**

"On June 8, 2021, officers with the Roswell, New Mexico Police Department and the Chaves County Drug Task Force received information of a location of Salvador Estevan Cobos, who had two outstanding felony warrants." (Doc. 82 ¶ 9.) The Presentence Investigation Report (PSR) states that officers began surveillance of the location and saw Cobos exit and walk toward a vehicle. (*Id.*) Two officers approached in a vehicle. (*Id.*) When Cobos saw the officers, he "pulled a handgun from his waistband, pointed it at [the] officers, and ran to the front of the vehicle, taking a position of cover behind the engine compartment." (*Id.*) The "[o]fficers positioned themselves behind the open doors of their own vehicle and [instructed] Cobos to drop the gun." (*Id.*) Cobos ignored the command until additional officers arrived. (*See id.*) He then "threw his gun underneath

the vehicle, placed his hands on his head, and he was taken into custody." (*Id.*) Officers recovered the firearm, a Kel-Tec .380 caliber, semi-automatic handgun manufactured in Florida. (*Id.* ¶ 10.)

On September 22, 2021, Cobos was indicted on one count of Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Doc. 23.) The Court set the matter for trial and then moved the trial setting back twice on Cobos's motions to continue. (*See* Docs. 27; 32; 35; 39–40.) Six days before trial was set to begin, Cobos filed a Notice of Intention to Enter a Guilty Plea. (Docs. 74–75.)

United States Chief Magistrate Judge Gregory B. Wormuth held a change of plea hearing on March 17, 2022. (Doc. 81.) Cobos pled guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(B) plea agreement. (*See* Docs. 80; 91 at 9, 11.) Judge Wormuth found that Cobos's "plea [was] knowing and voluntary and supported by sufficient facts." (Doc. 91 at 19–20.)

The United States Probation Office (USPO) filed Cobos's PSR on May 13, 2022. (Doc. 82.) On May 27, 2022, defense counsel Andre Poissant and Amanda Skinner filed a motion to withdraw as counsel, citing a conflict of interest between counsel and Cobos that "prevents any attorney in the office of the Federal Public Defender from representing [Cobos]." (Doc. 84 at 1.) The Court granted the motion and appointed Mario Esparza. (Docs. 85; 87.) On September 1, 2022, Cobos moved to withdraw his guilty plea. (Doc. 92.) He filed an amended motion on September 2, 2022. (Doc. 93.) The Government responded on September 16, 2022. (Doc. 94.) Cobos did not file a reply brief.

Cobos filed objections to the PSR on October 3, 2022. (Doc. 95.) The Government responded on October 6. (Doc. 97.) Esparza filed a motion to withdraw as counsel the same day, citing irreconcilable differences. (Doc. 98.) The Court conducted an abbreviated hearing on November 3, 2022. (*See* Doc. 106.) At the hearing, the Court heard briefly from the attorneys and

then granted Esparza's motion to withdraw. (*See id.*) The Court appointed current defense attorney Brock Benjamin. (Doc. 108.)

Cobos filed a pro se motion on January 19, 2023. (Doc. 110.) Cobos reiterates his desire to withdraw his guilty plea. (*Id.* at 1.) He also submits "newly discovered evidence" and asks the Court to compel his attorney to submit the evidence in his defense. (*Id.* at 1–2.) Finally, he alludes to a desire to replace his appointed counsel. (*Id.* at 4–6.)

### B. PSR and Objections

"The PSR placed [Cobos] in criminal history category II with a total offense level of 27, resulting in an advisory sentencing guideline range of 78–97 months." (Doc. 94 at 3 (citing Doc. 82 ¶¶ 27, 36, 61).) Cobos asserts two objections to the PSR. First, he objects to a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), which increases the base offense level "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . ." (*See* Doc. 95 at 2 (quoting U.S.S.G. § 2K21(b)(6)(B)).) Second, he objects to a six-level enhancement under U.S.S.G. § 3A1.2(c)(1), which increases the base offense level "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . ." (*See* Doc. 95 at 4 (quoting U.S.S.G. § 3A1.2(c)(1)).)

## II. The Court will deny the motion to withdraw guilty plea.

### A. Legal Standard

A court may grant a motion to withdraw a guilty plea "if the defendant shows any fair and just reason." *United States v. Black*, 201 F.3d 1296, 1299 (10th Cir. 2000) (quoting Fed. R. Crim. P. 32([d])). The defendant carries the burden to show a fair and just reason. *See id.* To determine

whether the defendant meets this burden, the Tenth Circuit has identified seven factors for the Court to consider:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; (7) whether the granting of the motion would cause a waste of judicial resources.

*Id.* at 1299–1300 (citing *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993)). Of these factors, three "are the most important . . . and are frequently dispositive": the defendant's assertion of innocence, the assistance of counsel, and the knowing and voluntary nature of the plea. *United States v. Qualls*, 741 F. App'x 592, 597 (10th Cir. 2018) (citing *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009). "[A] court need not address the prejudice to the government, the timing of the defendant's motion, the inconvenience to the court, or the waste of judicial resources factors 'unless the defendant establishes a fair and just reason for withdrawing his guilty plea' in the first instance." *Byrum*, 567 F.3d at 1265 (quoting *United States v. Hamilton*, 510 F.3d 1209, 1217 (10th Cir. 2007)).

    **B.**    **Cobos has not shown a fair and just reason to withdraw his plea.**

In his Amended Motion to Withdraw Guilty Plea, Cobos offers four conclusory reasons to withdraw his guilty plea, none of which are supported by an affidavit or by the record. (*See* Doc. 93 at 1–2.) Cobos asserts that his previous defense counsel: (1) estimated his sentencing range at 18–24 months; (2) "was prepared to file timely objections [to the PSR] and a video" but "never did due to the change in counsel"; (3) did not investigate exculpatory evidence; and (4) coerced him into pleading guilty. (*See id.*) In his more recent pro se motion to proceed, Cobos also submits an affidavit from an eyewitness to the incident who attests that she did not see Cobos with a firearm. (*See* Doc. 110 at 7–8.) He also states that the lapel cam footage of the incident shows that

4

he had two cell phones in his possession, one in each hand. (*Id.* at 2.) Considering the relevant factors, the Court finds that Cobos has failed to make the required showing.

### 1. Cobos has not asserted his innocence.

Cobos admitted his guilt when he signed the plea agreement and pled guilty on the record. (*See* Docs. 80; 91 at 18.) Cobos also acknowledged that the United States would have been able to prove facts establishing his guilt had the matter gone to trial. (*See* Doc. 91 at 18–19.) He has not since asserted his innocence. (*See* Doc. 93.) Critically, even in his recent pro se motion, he stopped short of asserting his innocence. (*See* Doc. 110.) Instead, he states that the lapel cam footage shows him with cell phones, and he submits an affidavit of a neighbor who witnessed the event and did not see him holding a firearm. (*See id.* at 7–8.) He did not submit his own affidavit or affirmatively state his innocence.[1] (*See id.*) This factor weighs against withdrawal of the plea. *See Byrum*, 567 F.3d at 1264 (noting that defendant did "not disclaim his admissions of guilt at the plea colloquy").

### 2. Cobos has not demonstrated ineffective assistance of counsel.

Cobos's motion is primarily based on his assertions that his previous attorneys were ineffective. (*See* Doc. 93 at 1–2.) "When a defendant's challenge to a guilty plea is based on ineffective assistance of counsel, [the Court] appl[ies] the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Hamilton*, 510 F.3d at 1216 (citation omitted). "To prevail under this test, [Cobos] 'must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced [his] defense.'" *Id.* (quoting *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996)).

---

[1] Cobos also states that he has "Palmers Hyperh[i]drosis[,] a condition where [he] sweat[s] profusely . . . ." (Doc. 110 at 4.) He further asserts that "Officer Alex Barleen contacting the weapon barehanded, contaminating the weapon after [his] arrest provided a limited support for inclusion of [his] DNA." (*Id.*) It is unclear what impact Cobos believes this has at this stage of the proceedings. Regardless, it is not an assertion of innocence.

5

Cobos asserts that his prior attorneys' performance was deficient because they estimated his sentencing range at 18–24 months, did not file timely objections to the PSR or a video, failed to investigate exculpatory evidence, and coerced him into pleading guilty. (*See* Doc. 93 at 1–2.) "[T]o establish that his attorneys' performance was constitutionally deficient, he must show that the attorney[s'] performance fell outside 'the wide range of competence demanded of attorneys in criminal cases.'" *Hamilton*, 510 F.3d at 1216 (quoting *Carr*, 80 F.3d at 417). Cobos fails to submit an affidavit or other evidence in support of his contentions or to mount any argument that his attorneys' performance fell below an acceptable level. (*See* Doc. 93.)

The Government argues that Cobos is unable to make such a showing in the face of contradictory evidence from his change of plea hearing. (*See* Doc. 94 at 10.) To begin, at the change of plea hearing, Cobos was sworn and affirmed that he was not under the influence of drugs, alcohol, or medication; that he was not suffering from an illness or medical problem that made it difficult to understand the proceeding; and that no one forced or threatened him to plead guilty. (Doc. 91 at 5.) Cobos affirmed that he had read the entire plea agreement, fully discussed it with his attorneys, and signed it. (*Id.* at 8–9.) Judge Wormuth thoroughly explained Cobos's rights and the consequences of his plea, and there was no indication that Cobos did not understand or was reluctant to plead guilty. (*See id.*) The Court now examines each of Cobos's allegations.

      **a.**      **Sentencing range estimate**

Cobos argues that his attorney incorrectly advised him of the possible sentencing range. (*See* Doc. 93 at 2.) Yet the record establishes Cobos's acknowledgement of and agreement to the fact that the sentencing range was entirely subject to the discretion of the sentencing judge. (*See* Docs. 80 at 6; 91 at 16.)

At his change of plea hearing, Cobos stated that he read the indictment and understood the charges against him as well as the applicable maximum punishment ("[u]p to ten years' incarceration, a fine of $250,000, three years of supervised release, and $100 special penalty assessment"). (Doc. 91 at 7.) Defense attorney Poissant summarized the plea agreement. (*See id.* at 9–10.) Poissant stated that the plea agreement was made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) and is not a binding agreement. (*Id.* at 9.) The parties recommended that "the Court grant a downward variance of six months from the low end of [the] applicable guideline of imprisonment range . . . ." (*Id.* at 9–10.) Poissant stated that the parties had agreed to a reduction for acceptance of responsibility, pursuant to the Court's acceptance. (*Id.* at 10–11.) Finally, he noted that Cobos agreed in the plea agreement to waive any right to appeal his conviction and sentence, to withdraw his guilty plea, to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A), or to file a collateral attack on the conviction (with the exception of a motion for ineffective assistance of counsel). (*Id.* at 12, 15.) Judge Wormuth asked Cobos if Poissant's "summary match[ed] up with how [he] underst[ood] the plea agreement[,]" and Cobos responded, "Yes, Your Honor, completely." (*Id.* at 13.)

Judge Wormuth carefully explained to Cobos that any agreements the parties made in drawing up the plea agreement were not binding on the sentencing judge. (*Id.* at 13.) He reiterated that the sentencing judge may "refuse to follow one or all of the stipulations[ a]nd if that happened, [Cobos] still would not be allowed to withdraw [his] guilty plea." (*Id.* at 13.) Judge Wormuth summarized that "at the end of the day, . . . [the sentencing judge] could give you a **sentence that's harsher than whatever your lawyers have estimated for you**." (*Id.* at 16 (emphasis added).) Cobos stated that he understood. (*Id.*)

7

In *United States v. Gordon*, the defendant pled guilty to one count of aiding and abetting the distribution of a controlled substance. 4 F.3d 1567, 1568 (10th Cir. 1993). In the PSR, the USPO "recommended an offense level which included the quantity of drugs involved in [other] dismissed counts as relevant conduct[,]" which "added six levels to [the d]efendant's offense level." *Id.* at 1569. The court denied the defendant's motion to withdraw his plea, and the defendant ultimately appealed his sentence in relevant part on the basis "that his guilty plea was involuntary and unknowing due to original counsel's ineffective assistance as evidenced by original counsel's . . . failure to inform [him] that relevant conduct would be considered in his sentencing . . . ." *Id.* The Tenth Circuit held that the defendant failed to show ineffective assistance of counsel. *Id.* at 1570–71. "A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Id.* (citations omitted). "Moreover, [the d]efendant's essential complaint [was] with the length of his sentence, and dissatisfaction with the length of a sentence is an insufficient reason to withdraw a plea." *Id.* at 1573 (citation omitted). Tenth Circuit "case law is clear that a defendant is not entitled to withdraw a guilty plea based on an erroneous prediction" of a sentencing range resulting in the "imposition of a sentence different from the one [the defendant] expected . . . ." *United States v. Rith*, 63 F. App'x 463, 464 (10th Cir. 2003) (citing *Gordon*, 4 F.3d at 1570; *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990)).

Cobos's unsubstantiated claim that his attorneys were ineffective for incorrectly estimating his possible sentencing range is contradicted by his sworn statements at the change of plea hearing. "[T]he judge *specifically* addressed the possibility that [Cobos] could face a higher sentencing range tha[n] what his attorneys estimated, including a sentence up to the maximum sentence[] of ten years described by the prosecutor." (Doc. 94 at 11 (quoting Doc. 91 at 16:3–18, 7:17).) Cobos

agreed that he understood this possibility. (Doc. 91 at 16:18–19.) He also acknowledged this possibility in the plea agreement itself. (*See* Doc. 80 at 6.) The agreement provides that Cobos "understands that the minimum and maximum penalty the Court can impose is . . . imprisonment for a period of not more than ten years . . . ." (*Id.* at 2.) Cobos further agreed that the United States had not made any agreement "that a specific sentence is the appropriate disposition of this case." (*Id.* at 3.) Cobos agreed that the stipulations within the plea agreement "are not binding on the Court[,] . . . that the Court may choose to vary from the advisory guideline sentence[,]" and that his "final sentence is solely within the discretion of the Court." (*Id.* at 6.) The Court finds Cobos fails to show ineffective assistance on this basis.

b.  **Objections to PSR**

Cobos asserts that his attorneys were ineffective because they failed to file timely objections to the PSR or to file a video. (*See* Doc. 93 at 2.) As the Court will consider Cobos's objections on the merits despite the timing of his filing, he fails to show any prejudice. Accordingly, Cobos fails to show ineffective assistance of counsel on this basis.

c.  **Investigation of exculpatory evidence**

Cobos alleges that his prior attorneys failed to pursue investigation of exculpatory evidence. (Doc. 93 at 2.) Where a defendant alleges ineffective assistance based on "a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and insisted on going to trial.'" *Gordon*, 4 F.3d at 1570 (quoting *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

Here, although Cobos now submits an affidavit from a neighbor who attests that she did not see him with a firearm (Doc. 110 at 7–8), the affidavit does not override his acknowledgement at his change of plea hearing that the Government, if the matter had "gone to trial, would be able to prove facts sufficient to establish [his] guilt beyond a reasonable doubt." (Doc. 91 at 10.) Poissant affirmed that he had discussed the factual basis of the plea agreement with Cobos and that Cobos agreed the "factual basis is true and correct." (*Id.*) Cobos also agreed that the United States' recitation of the facts it was prepared to prove at trial were true. (*See id.* at 18–19.) As the Government further points out, Cobos "was represented by a long-time, well-respected federal public defender." (Doc. 94 at 10 n.7.) The Court agrees that Cobos has now had the benefit of four local attorneys whose reputation for thorough and effective assistance is well-established. In sum, the Court finds that Cobos fails to establish prejudice based on any alleged failure to investigate.

### d.    Coercion

Finally, Cobos asserts that his attorneys coerced him into pleading guilty. The Court will examine this argument in its discussion of the next element. Overall, the Court finds that Cobos fails to show an ineffective assistance of counsel. This factor weighs against granting the motion.

### 3.    Cobos's plea was knowing and voluntary.

Cobos vaguely asserts that his attorneys coerced him into pleading guilty. (*See* Doc. 93 at 2.) To determine whether a plea was knowing or voluntary, "[t]he [C]ourt examines whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy." *United States v. Salas-Garcia*, 698 F.3d 1242, 1254 (10th Cir. 2012) (citation omitted). The plea

agreement, which Cobos signed and affirmed on the record that he read and understood, provides that "[t]he defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats or promises (other than the promises set forth in this plea agreement and any addenda)." (Docs. 80 ¶ 23; 91 at 5, 8–9, 13.) Additionally, in the paragraph above Cobos's signature, the agreement provides:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of the elements of the offense, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(Doc. 80 at 11.)

Cobos does not argue that he did not understand the terms of the plea agreement; rather, he appears to be unhappy that the USPO proposed sentencing enhancements. (*See* Docs. 93; 95.) Yet, as the Government notes in its response brief, Cobos "does not allege that defense counsel failed to advise him about the possibility that these enhancements would apply . . . ." (Doc. 94 at 5.) Nor does he assert that his attorneys promised him that he was not subject to any sentencing enhancements. (*See* Doc. 93.) Cobos does not argue otherwise.

The Court finds that Cobos's claim regarding coercion is explicitly contradicted by his sworn statements at the hearing. "The judge *specifically* asked [Cobos] whether anyone was forcing him or threatening him to make him plead guilty and [he] responded: 'No, Your Honor.'" (Doc. 94 at 10–11 (quoting Doc. 91 at 5:12–16).) He also affirmed that he "had enough time to talk with [his] attorneys about the facts and circumstances of [his] case[,]" and that he was "satisfied with the advice and representation [he had] received from them[.]" (Doc. 91 at 8.) After

a full and fair hearing, Judge Wormuth found that Cobos was "competent and capable of entering an informed plea; that he [was] aware of the nature of the charge against him and the consequences of pleading guilty to it." (*Id.* at 19.) He found that Cobos's "plea [was] knowing and voluntary and supported by sufficient facts." (*Id.* at 19–20.) *See also, e.g.*, *Gordon*, 4 F.3d at 1573 (where defendant argued that his plea was not knowing or voluntary based on the purported failure of defense counsel to calculate the sentencing range correctly, Tenth Circuit upheld denial of motion to withdraw in part because the court meticulously complied with the requirements of Rule 11).

In sum, Cobos "acknowledged on the record that the statutory maximum sentence for his offense was ten years, [(Doc. 91 at 7)], that the district court's final calculation of his sentence might differ from anything predicted by the attorneys in the case, [(*id.* at 13–14)], and that he would not be able to withdraw his plea based on such a difference in calculation, [(*id.*)]." *See Rith*, 63 F. App'x at 464–65. Under these circumstances, the Court finds that Cobos fails to meet his burden to show that his plea was not knowing or voluntary, and this factor weighs against withdrawal.

### 4. Remaining Factors

The Court finds the remaining factors, on balance, weigh against granting the motion to withdraw. The Government contends that it will be prejudiced by a withdrawal of Cobos's plea, because it had already "completed the bulk of [its] trial preparations" before he pled guilty, which will cause it to redo most of its work if the matter goes to trial. (*See* Doc. 94 at 11.) Moreover, because over a year has passed, there is a risk that witness recollections have faded, resulting in prejudice to the United States at trial. (*See id.* (citing *United States v. Yazzie*, 407 F.3d 1139 (10th Cir. 2005).) The Court agrees that this weighs against Cobos.

Cobos moved to withdraw his plea almost four months after his PSR was disclosed. (Docs. 80; 82; 93.) This was likely due in part to a change in counsel. (*See* Doc. 84.) The Court will consider the objections on the merits, and so this does not weigh in favor of granting the motion. Finally, granting withdrawal would be of some inconvenience to the Court, which spent time preparing for the first trial, presiding over the change of plea hearing, and would need to re-prepare for a second trial. This factor does not favor Cobos.

In sum, Cobos has not shown a fair and just reason for withdrawal of his guilty plea. The Court finds that Cobos fails to show that he had ineffective assistance of counsel or that his plea was not knowing or voluntary. Further, all relevant factors weigh against allowing a withdrawal of the plea. Accordingly, the Court will deny the motion to withdraw the guilty plea.

**III.   The Court will deny in part and grant in part Cobos's objections to the PSR.**

**A.   Legal Standard**

"At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence." *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) (citing *United States v. Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008)). To meet this standard, the United States "must show that the existence of a fact is more probable than its nonexistence." *United States v. Torres*, 483 F. Supp. 3d 1017, 1019 (D.N.M. 2020) (quotation marks and citations omitted).

**B.   The four-level enhancement under § 2K2.1(b)(6)(B) is appropriate.**

Section 2K2.1(b)(6)(B) provides for a four-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . ." "'[A]nother felony offense' 'means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one

year, regardless of whether a criminal charge was brought, or a conviction obtained.'" *United States v. Ortiz*, 457 F. Supp. 3d 1129, 1134 (D.N.M. 2020) (quoting U.S.S.G. § 2K2.1 cmt. 14(C)) (subsequent citation omitted). "Application note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession is 'in connection with' another felony offense 'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense.'" *Id.* (quoting U.S.S.G. § 2K2.1 cmt. 14(A)). "The Tenth Circuit has explained: 'The plain and commonly understood meaning of "facilitate" is to make easier.'" *Id.* (quoting *United States v. Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011)) (subsequent citation omitted).

Cobos argues that the United States "has not met its burden to prove possession of the firearm was in connection with another felony offense." (Doc. 95 at 2.) He asserts that "four heavily armed law enforcement agents apprehended [him] within seconds and [he] had his hands up." (*Id.* at 3 (citing Doc. 95-1).) The Government responds that Cobos "unlawfully possessed the Kel-Tec firearm in connection with the felony offense of Aggravated Assault," which is a fourth-degree felony. (*See* Doc. 97 at 4 (citing N.M. Stat. Ann. § 30-3-2).) Aggravated assault is defined in relevant part as "unlawfully assaulting or striking at another with a deadly weapon . . . ." N.M. Stat. Ann. § 30-3-2(A); *see also* UJI 14-305 NMRA. Assault consists, in relevant part, of "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery . . . ." N.M. Stat. Ann. § 30-3-1(B). The New Mexico Supreme Court has found that aggravated assault is a general intent crime and "does not require proof of a specific intent to assault the victim . . . ." *United States v. Ramon Silva*, 608 F.3d 663, 673 (10th Cir. 2010), *abrogated on other grounds by Mathis v. United States*, 579 U.S. 500 (2016) (citing *New Mexico v. Manus*, 597 P.2d 280, 284 (N.M. 1979), *overruled on other grounds by Sells v. New Mexico*, 653 P.2d 162, 164 (N.M. 1982)) (subsequent citations omitted).

In *United States v. Platero*, for example, the defendant shot a man named Padilla. 554 F. Supp. 3d 1164, 1174 (D.N.M. 2021). Shortly thereafter, the man called 911, and the defendant pointed the gun at Padilla while he was on the phone with the 911 operator. *Id.* at 1175. The court concluded that the defendant "used or possessed a firearm 'in connection with' aggravated assault with a deadly weapon under U.S.S.G. § 2K2.1(b)(6)(B), because [he] pointed the gun at Padilla a second time while Padilla was on the phone with 911 operators." *Id.* (citing N.M. Stat. Ann. § 30-3-2(A)). In *New Mexico v. Anaya*, the New Mexico Court of Appeals "held that [the defendant] holding a gun, pointing it at two men, and asking for money, was sufficient to sustain a conviction of aggravated assault." *New Mexico v. Woods*, 483 P.2d 504, 505 (N.M. Ct. App. 1971) (discussing *Anaya*, 439 P.2d 561 (N.M. Ct. App. 1968)).

Here, the Government presents video evidence and testimony from Officer Garrett Dollar to show that Cobos pointed a firearm at the officers for several seconds. (*See* Doc. 95-1; *see also* Doc. 111.) Cobos does not dispute that the officers shielded themselves behind the doors of their vehicles. (*See* Doc. 95.) It is reasonable to conclude that the officers shielded themselves because they reasonably believed Cobos was going to shoot them. Under these circumstances, the Court concludes that the Government has shown by a preponderance of the evidence that Cobos used or possessed the firearm in connection with an aggravated assault for purposes of U.S.S.G. § 2K2.1(b)(6)(B). The Court overrules Cobos's objection to this enhancement.

### C. The Court sustains the objection to the six-level enhancement under § 3A1.2(c)(1).

Section 3A1.2(c)(1) provides for a six-level enhancement "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . ." Generally, "[s]ubsection (c) applies in circumstances

tantamount to aggravated assault against . . . a law enforcement officer, committed in the course of . . . another offense . . . ." *Id.* cmt. n.4(B). "While subsection (c) may apply in connection with a variety of offenses that are not by nature targeted against official victims, its applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least 'a substantial risk of seriously bodily injury.'" *Id.*

At the hearing, the Government played lapel cam video in an attempt to show that Cobos knew or had cause to believe that he was pointing a firearm at officers. The Court finds that the Government fails to make the requisite showing. Officer Dollar testified that Cobos pointed the gun in Dollar's direction. Dollar acknowledged, however, that he arrived at the scene in an unmarked vehicle with no emergency equipment activated. Dollar was dressed in a red t-shirt, jeans, and a tactical vest.[2] There is no indication from the footage that officers, either those who arrived first or Dollar and his partner who arrived shortly thereafter, identified themselves as law enforcement to Cobos; instead, they ordered him to drop his gun and he quickly complied.

Under these circumstances, the Court concludes the Government has not demonstrated that it was more probable than not that Cobos knew or had reasonable cause to believe that he was pointing his firearm at law enforcement officers. The Court will sustain Cobos's objections to the six-level enhancement.

**IV.     The Court denies Cobos's motion to proceed.**

The Court turns now to Cobos's pro se motion to proceed. (Doc. 110.) The Court denies the motion to the extent that Cobos renews the motion to withdraw his guilty plea. Cobos also asks

---

[2] Dollar stated that he could not recall whether his vest says Chaves County Metro Narcotics Task Force or an acronym for that unit. Regardless, the print was likely unidentifiable to Cobos—both because of the distance between the two and because of the brief time he would have had to read it. Moreover, Dollar acknowledged that when he exited the vehicle, he immediately crouched behind the door when Cobos pointed the gun in Dollar's direction. Thus, Cobos did not have an opportunity to read the print on Dollar's vest to identify him as law enforcement.

the Court to compel Benjamin to present mitigating evidence. (Doc. 110 at 1.) To the extent that Cobos references evidence he discussed in the pro se motion, the Court has already considered such evidence and Cobos's related arguments in this Opinion. Of course, the Court does not preclude Benjamin from presenting this or any other mitigating evidence at the sentencing hearing. The Court declines, though, to *compel* Benjamin to present any specific evidence or to adopt a specific legal strategy.[3] After all, "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. "Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* (citation omitted).

Moreover, Benjamin is already working under certain professional obligations. "Representation of a criminal defendant entails certain basic duties[,]" all of which are related to the attorney's function to "assist the defendant . . . ." *Id.* at 688. Given the circumstances here, there is no evidence that Benjamin—or any other of Cobos's previous attorneys—have performed in an objectively unreasonable manner.

Benjamin explained to the Court that he has performed an investigation in this case and has attempted to communicate with Cobos on more than one occasion. According to Benjamin, Cobos has largely rebuffed his attempts and Benjamin has been unable to have a civil conversation with him. The Court cautions Cobos that his decision to treat his attorneys with disdain or disrespect is counterproductive. While Benjamin has a professional responsibility to competently represent Cobos, his ability to do so effectively may be hampered by Cobos's own conduct. *See id.* at 691 (noting that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.") It is in Cobos's self-interest to communicate respectfully with Benjamin in preparation for the sentencing hearing.

---

[3] To the extent that the undersigned made any oral decision at the January 24 hearing that could be construed to conflict with its decision here, this written Opinion clarifies and controls.

Finally, although Cobos did not clearly ask the Court to appoint new counsel in this motion (*see* Doc. 110), the undersigned reminds Cobos of my warning at the November 3, 2022 hearing that the Court will not appoint further counsel for him. Given the number of attorneys Cobos has gone through, it appears that the underlying problem may lie in how he is choosing to communicate and work with his court-appointed counsel. That does not reflect on his attorneys, but on Cobos.

**THEREFORE,**

**IT IS ORDERED** that Cobos's Amended Motion to Withdraw Guilty Plea (Doc. 93) is **DENIED**;

**IT IS FURTHER ORDERED** that Cobos's Objections to Presentence Investigation Report (Doc. 95) are **GRANTED in part** and **DENIED in part**;

**IT IS FURTHER ORDERED** that Cobos's pro se Motion to Proceed (Doc. 110) is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE